UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. PHILLIPS, | : | Case No. 3:12-cv-207 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| PNC BANK, NA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# ORDER GRANTING DEFENDANT PNC BANK'S
# MOTION TO DISMISS (Doc. 12)

This civil action is before the Court on the motion of Defendant PNC Bank, National Association ("PNC")[1] to dismiss the Amended Complaint (Doc. 12), and the parties' responsive memoranda (Docs. 15, 16).

Plaintiff alleges that PNC told her on the telephone that it would modify her mortgage at a 4.625% interest rate if she sent in trial payments according to a trial period plan documentation she received, but that PNC ultimately agreed only to modify her mortgage at a 6.875% rate. Although PNC has already obtained a judgment of foreclosure against Plaintiff in state court, Plaintiff moves this Court to order PNC to specifically perform on the alleged oral promise to modify her mortgage at the 4.625% rate, invalidate the pending foreclosure proceedings, and otherwise award damages under the Fair Debt Collection Practices Act ("FDCPA").

---

[1] Defendant Green Tree Servicing LLC is also a party to this case.

I.  FACTS ALLEGED

For purposes of this motion to dismiss, the Court must: (1) view the Amended Complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

In 2007, Plaintiff executed a note and first mortgage secured by residential property in Tipp City, Ohio. (Doc. 10, § 18, Exs. A, B).  National City Mortgage, a division of National City Bank, serviced and/or owned the note and declared Plaintiff in default on October 5, 2009. (*Id.* at ¶ 20, Ex. C).  PNC acquired National City Bank's rights with regard to the note and first mortgage through a November 2009 merger. (*Id.* at ¶¶ 21, 48, Exs. D, J).  In September 2010, PNC commenced foreclosure proceedings against Plaintiff in the Miami County, Ohio Common Pleas Court, in a case captioned *National City Mortgage v. Phillips*, No. 10-803. (*Id.* at ¶ 26, Ex. J).  PNC obtained a default judgment against Plaintiff in October 2010. (*Id.* at ¶ 27).

In September 2011, Plaintiff alleges that she received telephone calls concerning potential modification of her PNC loan, followed by trial period program correspondence dated September 15, 2011, again discussing potential modification. (Doc. 10 at ¶ 26, Ex. K).  The September 15, 2011 letter informed Plaintiff that she "may be eligible for a [loan] modification" and Plaintiff agreed that:

> all terms and provisions of your current mortgage note and
> mortgage security instrument remain in full force and effect
> and you will comply with those terms; and that nothing in the
> Trial Period Plan shall be understood or construed to be a

>     satisfaction or release in whole or in part of the obligations
>     contained in the loan documents.
>
>     ***
>
>     If an error in the terms of the Trial Period Plan or your eligibility
>     is detected after issuance of the Trial Period Plan notice, the
>     Trial Period Plan will be void and of no legal effect upon notice
>     to you of such error.

(*Id.*, Ex. K at 207, 209). Plaintiff alleges that she made payments under the Trial Period Plan, but PNC did not modify her mortgage on terms to her liking. (*Id.* at ¶¶ 33, 45).

PNC filed a complaint in foreclosure against Plaintiff on September 2, 2010. After PNC obtained a default judgment in the trial court on October 10, 2010, PNC chose to withdraw the sale and voluntarily entered into a modification agreement with Plaintiff, who hoped to stay in her home. PNC allegedly made a number of fraudulent, deceptive, and misleading representations to Plaintiff in connection with this agreement, in violation of federal and state laws, in order to continue exacting payments from Plaintiff outside the legal process of selling the property and obtaining a deficiency judgment. PNC withdrew the property from the Sheriff's sale a total of three times, while the U.S. Comptroller of the Currency investigated Plaintiff's loan. Rather than wait for the legal process to provide relief, Plaintiff alleges that PNC resorted to making false representations to maintain its cash flow on her loan.

Plaintiff filed an action in this Court on June 27, 2012, seeking relief under the FDCPA and theories of promissory estoppel, breach of contract, and fraud. Plaintiff

seeks relief for the alleged wrongful conduct that PNC committed after the foreclosure judgment, and Defendant PNC seeks to dismiss all claims.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949.  A claim is plausible where "plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III. ANALYSIS

**A.  Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine prevents federal district courts from exercising appellate jurisdiction over state court judgments and applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Plaintiff argues that Rooker-Feldman does not apply here because the relief requested does not seek to vacate, overturn, or disturb the judgment in the state court. This Court disagrees. Plaintiff seeks specific performance enforcing an alleged statement PNC made to her during a telephone call. (Doc. 15 at 12). If granted, this relief would invalidate the state court judgment of foreclosure awarded to PNC. (Doc. 15 at 12). *O'Neal v. Nationstar Mtg.*, No. 07cv505, 2008 U.S. Dist. LEXIS 121931, at *10-12 (S.D.

Ohio Feb. 16, 2008) (holding that plaintiff's claims directly attacking state court foreclosure action were barred by Rooker-Feldman).[2]

Plaintiff cites cases where the Rooker-Feldman doctrine was found inapplicable in a context where a party, after state court foreclosure proceedings, brought a subsequent freestanding federal suit for damages arising from the party's conduct in the foreclosure proceeding, but where the relief sought in the federal court did not impact the state court judgment. *See, e.g., Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 437 (6th Cir. 2006) (holding Rooker-Feldman doctrine did not preclude federal court jurisdiction over a FDCPA claim, where injury complained of stemmed from the filing of a false affidavit in the state court and where party sought damages which did not impact state court judgment of foreclosure). However, the case at bar is distinguishable from these cases because here Plaintiff seeks specific performance and therefore the damages sought do impact the state court judgment.

Accordingly, the Court finds that the Rooker-Feldman doctrine is applicable and that this Court lacks subject matter jurisdiction.

Moreover, even if the Rooker-Feldman doctrine were inapplicable, Plaintiff's Amended Complaint would still fail as a matter of law.

---

[2] *See also Goetzman v. Agribank*, 91 F.3d 1173, 1177 (8th Cir. 1996) (plaintiff barred under Rooker-Feldman from seeking a federal judgment that would alter a state court judgment when "the heart of the state court proceedings" involved a determination of the plaintiff's mortgage payment); *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 53 n.12 (Bankr. D. Del. 2012) (explaining that the Rooker-Feldman doctrine prevents a federal court from "taking action to render a state court judgment ineffectual").

### B. FDCPA Claim

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007) (FDCPA does not apply to a "party to whom the debt is due"). Creditors and mortgage servicers are excluded from the definition of "debt collector," provided the creditor or servicer neither acquired the debt when it was in default nor treated the debt as if it were in default at the time of acquisition. *Bridge v. Ocwen Fed. Bank.*, 681 F.3d 355, 362 (6th Cir. 2012) (holding that the "definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition.").

While Plaintiff argues that PNC is a debt collector, she provides no facts supporting such a finding. *BAC Home Loans Servicing v. Fall Oaks Farm*, No. 2:11cv274, 2012 U.S. Dist. LEXIS 112528, at *10 (S.D. Ohio Aug. 10, 2012) (dismissing FDCPA claim where "[t]here are no factual allegations, as opposed to unsupported conclusory statements, indicating that BoA falls within the statutory definition of a debt

collector" and because "[e]xcluded from the statutory definition of a debt collector is a creditor, such as BoA, which is attempting to collect its own debt").

Here, National City Bank merged with PNC effective in November 2009. (Doc. 10 at ¶¶ 20-21, Exs. C-D). Accordingly, PNC acquired Plaintiff's loan through its merger with National City and PNC therefore stands in National City's shoes as a creditor, not a debt collector subject to the FDCPA. *Brown v. Morris*, 243 F. App'x 31, 34-35 (5th Cir. 2007) (party that acquired a mortgage by merger, rather than by transfer or assignment, had not "obtained" the debt while it was in default, and thus, was not an FDCPA debt collector).

Therefore, Plaintiff's FDCPA claim fails as a matter of law.

### C. Contract Claim

To prevail on a breach of contract claim, a claimant must establish the existence of a contract, performance on its part, breach by the other party, and damages. *Tidewater Fin. Co. v. Cowns*, 968 N.E.2d 59, at ¶ 12 (Ohio Ct. App. Dec. 28, 2011).

Plaintiff contends that the Trial Period Plan was an offer to permanently modify her loan at an interest rate of 4.625%, because PNC quoted her that rate during a telephone call. (Doc. 15 at 10-11). Plaintiff claims she accepted this conditional offer by mailing in the requested payments pursuant to the Trial Period Plan documentation, and that PNC breached the contract by offering her a mortgage modification, but at a 6.825% rate rather than at a 4.625% rate. (*Id.*) Plaintiff identifies no writing signed by PNC promising modification at a 4.625% interest rate.

Under Ohio law, the statute of frauds requires all mortgage modifications, including the applicable interest rate, to be in writing in order to be enforceable. Ohio Rev. Code § 1335.02(B) ("No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing[.]"). "An alleged oral modification to a mortgage is insufficient to satisfy the statute of frauds." *Hammond v. Citibank*, No. 2:10cv1071, 2012 U.S. Dist. LEXIS 129671, at *21-22 (S.D. Ohio Sept. 12, 2012).

Plaintiff has failed to identify any writing offering to modify her mortgage at a 4.625% interest rate, and as to the Trial Period Plan documentation that she does identify, Plaintiff agrees that it is not an enforceable contract. Moreover, the Trial Period Plan documents do not specify the use of a 4.625% interest rate. Accordingly, Plaintiff's contract claim fails as a matter of law.

### D. Promissory Estoppel

In order to state a claim for promissory estoppel a plaintiff must demonstrate: "(1) a promise, clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) such reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance." *Bluegrass Ctr. v. U.S. Intec, Inc.*, 49 F. App'x 25, 31-32 (6th Cir. 2002).

Plaintiff maintains that PNC "promised [her] that if all of the 'trial period payments' were made timely, Defendant PNC would permanently modify [her] First Mortgage Loan," citing the September 15, 2011 letter from PNC setting forth the details

of a Trial Period Plan for potential modification of her loan. (Doc. 10 at ¶ 78, Ex. K). However, the Trial Period Plan specifically informed Plaintiff that "if an error in the terms of the Trial Period Plan or your eligibility is detected after issuance of the Trial Period Plan notice, the Trial Period Plan will be void and of no legal effect upon notice to you of such error." (*Id.*, Ex. K at 209).

Plaintiff alleges no facts that PNC made a clear and unambiguous promise to modify her mortgage at a 4.625% interest rate and, indeed, that interest rate is not identified in the Trial Period Plan. Moreover, even if the interest rate were identified in the Trial Period Plan, Plaintiff concedes that the Plan is not a contract. *See, e.g., Kiser v. CitiMortgage, Inc.*, No. 3:11cv1428, 2011 U.S. Dist. LEXIS 115560 (N.D. Ohio Oct. 6, 2011) (plaintiffs alleged the lender promised to provide a mortgage modification if the borrower made trial payments under the mortgage modification program, but the district court found no clear promise where the lender required additional information to evaluate the plaintiff's financial situation). The Trial Period Plan in this case provided no clear promise and in fact informed Plaintiff that she "may be eligible for a [loan] modification" that "all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect" and that "if an error in the terms of the Trial Period Plan or your eligibility is detected after issuance of the Trial Period Plan notice, the Trial Period Plan will be void and of no legal effect upon notice to you of such error." (Doc. 10, Ex. K).

Moreover, "[a] party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract must be in writing and signed by the party to be charged." *Hammond*, 2012 U.S. Dist. LEXIS 129671 at 22 (promissory estoppel claim to enforce purported loan modification not actionable where no writing as to modify loan terms alleged).

Therefore, Plaintiff's claim for promissory estoppel fails as a matter of law.

**E.     Fraud**

Fraud requires a false statement of material fact. *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709 (1987). The Amended Complaint alleges that PNC misrepresented that:

(1)   PNC "would provide Plaintiff a permanent loan modification if Plaintiff made the 'trial period payments' in the amount of $877.63 each month for three months"; and that

(2)   PNC "would provide Plaintiff with a permanent loan modification with a total monthly payment of $853.62, an interest rate of 4.625% and at the term existing in the First Mortgage Transaction."

(Doc. 10, ¶¶ 51, 94-95). These statements are not actionable because an alleged promise to modify a loan relates to future actions and therefore is not a false statement of present fact. *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007-Ohio-7007, ¶ 25 (Ohio Ct. App. Dec. 27, 2007). Here, the claimed "misrepresentations" were based on PNC's alleged failure to fulfill the promise to modify Plaintiff's mortgage. Because Plaintiff based these

claims on the identical actions or conduct from which she claimed breach of contract, she has not stated any actionable misrepresentation. *See, e.g., Kiser*, 2011 U.S. Dist. LEXIS 115560, at 15 (dismissing portion of fraud claim concerning promised mortgage modification, noting "statements about getting the modification were predictions, not statements of fact. They are not actionable in fraud.").[3]

Plaintiff acknowledges that "a promise of future action" like the alleged misrepresentations here does not usually state a claim for fraud, but she argues that her allegations fall into a limited exception applicable when the party pleads facts allowing an inference that the party making the statement "never had any intention of keeping the promise." (Doc. 15 at 17). However, this is simply not the law in Ohio. *See, e.g., Kiser*, 2011 U.S. Dist. LEXIS 115560 at 15.

Plaintiff has also failed to plead reasonable reliance on PNC's alleged oral statements, particularly since PNC provided Plaintiff with detailed written documentation setting forth the specific terms as to how her loan might potentially be modified. (Doc. 18, Ex. K). Ohio courts have held that plaintiffs, in the absence of formal loan approval, cannot establish reasonable reliance on the basis of a loan officer's statements about extending credit. *Dawes v. BAC Home Loans Servicing*, No. 1:10cv2637, 2011 U.S. Dist. LEXIS 66507 at *18-19 (N.D. Ohio Apr. 27, 2011) (dismissing plaintiff's fraud claim

---

[3] *See also Englert v. Nutritional Scis.*, 1008-Ohio-5062, at ¶ 25 (Ohio Ct. App. 2008) ("[A] claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct.").

against lender when "he [] failed to plead any facts establishing the element of justifiable reliance").

Finally, there are no facts that PNC had scienter when it allegedly told Plaintiff on the telephone that a 4.625% interest rate would apply. That interest rate was not identified in the written Trial Period Plan documentation dated September 15, 2011. (Doc. 10, Ex. K). The alleged oral misrepresentation occurred on March 22, 2012. (*Id*. at ¶ 51). The formal written modification offer, containing the 6.875% rate, was provided to Plaintiff on May 16, 2012. (Doc. 10, ¶ 45, Ex. L). The alleged oral misrepresentation is contradicted by both written documents.

Accordingly, Plaintiff's fraud claim is not actionable as a matter of law.

### IV. CONCLUSION

Accordingly, for the reasons stated here, Defendant PNC Bank's motion to dismiss (Doc. 12) is **GRANTED**, and PNC Bank is terminated as a party to this civil action.

**IT IS SO ORDERED**.

Date: 12/10/13   *s/ Timothy S. Black*
   Timothy S. Black
   United States District Judge